UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            Case No. 21-CR-127

JAMISON L. KRAHENBUHL,

        Defendant.

---

## DECISION AND ORDER DENYING MOTION TO DISMISS

Jamison Krahenbuhl honorably served this country as a captain in the United States Air Force prior to his discharge. As a veteran, he was and is entitled to receive medical care from the Department of Veterans Affairs (VA) at his local clinic, the Milo C. Huempfner VA Outpatient Clinic in Green Bay. However, Krahenbuhl was involved in an episode at the clinic during which he harshly relayed his views on the quality of care he was receiving. As a result, Krahenbuhl received two citations. This matter comes before the Court on Krahenbuhl's motion to dismiss the citations, Dkt. No. 4, arguing the underlying regulations violate his First Amendment right to free speech, or, alternatively, the regulations are unconstitutionally vague in violation of the Fifth Amendment. For the reasons that follow, Krahenbuhl's motion will be denied.

## BACKGROUND

Air Force veteran Jamison L. Krahenbuhl sought treatment at the Milo C. Huempfner VA Outpatient Clinic in Green Bay for sleep apnea.[1] Dkt. No. 5 at 2. Krahenbuhl's care provider was

---

[1] There is disagreement amongst the various materials before the Court as to the specific date of the underlying incident. The Information alleges the underlying altercation took place on March 29, 2021. Dkt. No. 1 at 1, 2. In his motion, meanwhile, Krahenbuhl states the incident took place on March 19, 2021. Dkt. No. 5 at 2. The Government, in its response, presents the incident as occurring on March 24, 2021. Dkt. No. 7 at 1.

Tiffany Mueller, a respiratory therapist employed by the clinic. *Id*. Shortly after Mueller began the medical interview, Krahenbuhl, a registered nurse, began to suspect Mueller was conducting procedures outside the scope of her training and asked her, "who the hell are you?" *Id*. In a subsequent interview with VA police officers, Mueller stated that she had performed an enrollment evaluation for Krahenbuhl, "regarding a sleep apnea machine he had previously been issued." Dkt. No. 7 at 3. Mueller allegedly told Krahenbuhl he did not qualify for the machine under VA guidelines, at which point he became belligerent. *Id*. at 4. Mueller requested Krahenbuhl leave, which he did after informing Mueller he would be reporting her for a professional conduct violation. Dkt. No. 5 at 2. At some point during Krahenbuhl and Mueller's interaction, another VA employee, Julie Malchak, activated a panic alarm, which informed VA Police of the disturbance. *Id*. at 3.

Police dispatchers alerted Lt. Turk and Officer St. Amour, who both responded. Dkt. No. 7 at 1. Officer St. Amour, who apparently arrived first, observed Krahenbuhl and two others on the first floor of the clinic. *Id*. As Krahenbuhl approached him, St. Amour identified himself as a police officer, to which Krahenbuhl replied, "fuck off, you're just a security guard." *Id*. at 2. Krahenbuhl then pushed past St. Amour, who attempted to reengage with Krahenbuhl. *Id*. Krahenbuhl again yelled "fuck off," and left the building. *Id*.

St. Amour followed Krahenbuhl out of the building and kept trying to speak with him, while Krahenbuhl kept yelling back. *Id*. By that point, Lt. Turk had arrived on scene and asked Krahenbuhl to stop walking away from the officers, placing his hand out in the process. *Id*. Krahenbuhl responded by moving to an aggressive stance, clenching his fists. *Id*. St. Amour displayed his pepper spray in attempt to calm Krahenbuhl down, who then retreated to a neutral stance. *Id*. Lt. Turk asked Krahenbuhl why he was upset, to which Krahenbuhl replied: "fuck off,

you're just a security guard." *Id*. Krahenbuhl then began to walk away again, followed by the officers, who were walking about twenty five feet behind. *Id*. at 3. St. Amour told Krahenbuhl that officers were there to help and they cared about him, to which Krahenbuhl replied, "the staff are a bunch of fucking idiots. I was issued a CPAP machine and now I can't get any help with it. They're fucking with my disability rating." *Id*. Krahenbuhl then reached his car and departed the parking lot at a high rate of speed. *Id*.

Krahenbuhl was cited for one count of disorderly conduct and one count of disrupting the performance of government employees, in violation of 38 C.F.R. § 1.218(a)(5) and (b)(11). Dkt. No. 1 at 1, 2. This motion followed.

## ANALYSIS

The regulation at issue here, 38 C.F.R. § 1.218, concerns the security of VA facilities. § 1.218(a)(5) states,

> Disturbances. Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited. In addition to measures designed to secure voluntary terminations of violations of this paragraph the head of the facility or designee may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises.

Meanwhile, § (b)(11), which sets out the schedule of penalties, states, "[d]isorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility, $250."

3

Krahenbuhl contends these twin provisions violate his First Amendment right to free speech, or, alternatively, the statutes are unconstitutionally vague under the Fifth Amendment.

### A. Standard

There is a presumption of constitutionality of statutes under long-established legal precedents. *Bowen v. Kendrick*, 487 U.S. 589, 617 (1988); *see also U.S. v. Vasquez*, 576 F. Supp. 2d 928, 933 (N.D. Ill. 2008). The burden to defeat this presumption always falls on the party complaining of unconstitutionality. *Vasquez*, 576 F. Supp. 2d at 933 (citing *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 809 (7th Cir. 1999)). Courts should avoid declaring a law unconstitutional "unless its repugnancy to the supreme law of the land" is beyond dispute. *Henderson Bridge Co. v. City of Henderson*, 173 U.S. 592, 615 (1899). Although regulations are not statutes *per se*, they have the full force and effect of law and receive the same analytical treatment. *See In re Bickel Associates, Inc.*, 170 B.R. 140, 142 (W.D. Wis. 1994); *see also Community Pharmacies of Indiana, Inc. v. Indiana Family and Social Services Admin.*, 801 F. Supp. 2d 802, 805 (S.D. Ind. 2011).

### B. First Amendment Freedom of Speech as Applied

The First Amendment prohibits government entities from "abridging the freedom of speech." U.S. CONST. amend. I. However, the Supreme Court has recognized that freedom of speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942). There are certain types of speech, "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace," that may be regulated without offending the Constitution. *Id*.

To determine whether the freedom of speech has been inappropriately diminished, courts must conduct a three-part analysis. *Cornelius v. NAACP Legal Defense and Educational Fund,*

4

*Inc.*, 473 U.S. 788, 797 (1985). First, the speech at issue must be assessed to determine whether it is protected speech. *Id*. The First Amendment does not, for example, protect speech "that constitutes 'fighting words' consisting of 'personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke [a] violent reaction.'" *Congine v. Village of Crivitz*, 947 F. Supp. 2d 963, 970 (E.D. Wis. 2013) (citing *Cohen v. California*, 403 U.S. 15, 20 (1971)). If the speech is not protected, a reviewing court need go no further. *Cornelius*, 473 U.S. at 797.

Second, the nature of the forum where the speech took place must be identified. *Id*. Unlike public fora, governmental ability to regulate speech is at its zenith in nonpublic settings. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46, (1983). This circuit has defined a nonpublic forum as "'[p]ublic property which is not by tradition or designation a forum for public communication.'" *Carreon v. Illinois Dept. of Human Services*, 395 F.3d 786, 796 (7th Cir. 2005) (citing *Perry*, 460 U.S. at 46)). Deciding the particulars of whether a forum is public or nonpublic requires a consideration of whether the government property is open to the public as well as "the nature and use of the property at issue." *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1313 (2008) (citing *United States v. Grace*, 461 U.S. 171, 178 (1983)). Third and finally, any government restrictions on speech must be reasonable under the circumstances and viewpoint neutral. *Cornelius*, 473 U.S. at 806. The government may not exclude a speaker if the basis for doing so is "solely to suppress the point of view he espouses on an otherwise includible subject." *Id*.

It is quite clear that the regulation at issue here, and its application to Krahenbuhl, does not violate the First Amendment. As an initial matter, Krahenbuhl was not engaging in protected speech during the incident that gives rise to these citations. No matter what caused Krahenbuhl's

5

consternation at the VA on the day in question, he hurled expletives at multiple employees on his way out the door. Any reasonable person subjected to Krahenbuhl's repeated invectives would consider them to be fighting words.

Krahenbuhl analogizes his language to that used by the defendant in *Cohen*, who wore a jacket emblazoned with the words "fuck the draft." 403 U.S. at 16. In *Cohen*, however, the use of the expletive was a general statement on a political issue, not directed at one or more specific persons, as Krahenbuhl's employment of the word was here. Krahenbuhl's use of a particular expletive as well as his choice to direct it at specific people make his statements fighting words. As a matter of law therefore, they are not protected speech.

Given that Krahenbuhl is unsuccessful on this first score, his motion fails on free speech grounds. However, the Court will continue for the purposes of analysis. Krahenbuhl contends in his reply brief that because the VA hosts periodic outreach events at the clinic, it cannot be a nonpublic forum. Dkt. No. 8 at 5. This misstates the standard. Determining whether a forum is public or not requires a careful consideration of the nature and use of the property as well as whether it is open to the public. Few places have more nonpublic characteristics than medical centers, whose work is private by its very nature. Krahenbuhl seems to admit as much in his brief, writing that he was taken to "a secure and secluded" spot within the clinic, after being escorted from the patient area. Dkt. No. 5 at 2. That phrasing suggests a compartmented atmosphere at the clinic, which lends itself to the private nature of medical facilities in general. That Krahenbuhl was not free to walk wherever he wanted within the facility is itself enough evidence, beyond the obvious privacy-centered focus of medical centers generally, that the facility is a nonpublic forum.

The fact that the VA has hosted various outreach events at the facility throughout the year does not lend credence to Krahenbuhl's claim. Even if the VA had thrown open the doors and

6

allowed visitors to have the run of the facility, Krahenbuhl would fail because the VA's regulations on the day of the incident are reasonable and viewpoint neutral. Presumably, other veterans were receiving treatment at the facility that day, and Krahenbuhl is not entitled to disrupt them and their providers. Limiting Krahenbuhl from interfering with their treatment, or overhearing confidential health information, is eminently reasonable. Indeed, reasonability is built into the language of the regulation itself. The regulation is also viewpoint neutral. Krahenbuhl seems to contend he was targeted because of his negative views of the VA. However, there is nothing in the record before the Court that the VA is allowing those with positive views of the VA to freely roam the facility. In short, the regulation is both reasonable and viewpoint neutral. Certainly not rising to the level of unconstitutionality.

After the briefs were filed in this case, Krahenbuhl filed a letter with the Court drawing attention to another case in this district, *Cohoon v. Konrath*, which he argues is analogous to this case. Dkt. No. 9; No. 20-CV-620, 2021 WL 4356069 (E.D. Wis. Sept. 24, 2021). In so arguing, Krahenbuhl contends the citations in dispute here were issued to stop constitutionally protected speech, namely Krahenbuhl's complaints about Mueller's conduct. Dkt. No. 9. *Cohoon* is a First Amendment retaliation case couched in the context of local authorities attempting to punish private actors for online speech. *See generally* 2021 WL 4356069. It seems apparent based on the information and briefing that the conduct underlying the citations is not any complaints Krahenbuhl may have about VA professional standards, but his allegedly boisterous and disruptive behavior at the VA on the day in question. *See generally* Dkt. No. 1; Dkt. No. 5; Dkt. No. 7; Dkt. No. 8. The lack of apparent retaliation in this case places *Cohoon* beyond utility for Krahenbuhl.

7

## C. First Amendment Unconstitutional Overbreadth

To establish a claim for constitutional overbreadth under the First Amendment, the complaining party must show the enactment reaches a substantial amount of constitutionally protected conduct. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987). Those enactments which criminalize a "substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* at 459. Stated another way, an enactment is constitutionally overbroad when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bauer v. Shepard*, 620 F.3d 704, 715 (7th Cir. 2011) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2011)). A statute is not overbroad "merely because it is possible to conceive of a single overbroad application." *Hill*, 482 U.S. at 458. However, that Krahenbuhl's challenge to the regulation as applied to his situation fails does not impact his overbreadth challenge. Rather, Krahenbuhl is able to challenge a law and succeed where there can be a "judicial prediction . . . that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

In contending the statute is facially overbroad, Krahenbuhl conflates the application of the First Amendment overbreadth language with a theoretical due process challenge over the VA's disruptive persons list. Dkt. No. 5 at 4. The question as to overbreadth is whether the regulation at issue here has a substantial number of unconstitutional applications. It does not. Krahenbuhl adduces multiple cases in his brief in support of his argument that his conduct is itself an example of an unconstitutional application. In offering each example, Krahenbuhl details the facts of the case before declaring his situation dissimilar. Dkt. No. 5 at 6–7. Krahenbuhl ignores the fact that

8

in each of the cases he cites the challenger was unsuccessful.  Indeed, time and again the Ninth Circuit, Krahenbuhl's court of choice, upheld the regulation at issue here.  Krahenbuhl bears the burden of demonstrating that the regulation has a substantial number of unconstitutional applications.  *See Vasquez*, 576 F. Supp. 2d at 933.  He has not done so.  For that reason, his claim of unconstitutional overbreadth fails.  However, the Court can scarcely imagine multiple scenarios, let alone in sufficient number to render the regulation unconstitutional, where it could be illegal in application.  The same reasonableness standard that forms part of the government's burden when abridging speech is included in the regulation.

**D. Fifth Amendment Unconstitutional Vagueness**

The government is explicitly prohibited from enforcing laws that contain "terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Gresham v. Peterson*, 225 F.3d 899, 907 (7th Cir. 2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984)).  Laws and regulations must contain a "reasonable degree of clarity" that reduces the risk of arbitrary enforcement and may not place "virtually complete discretion in the hands of the police." *Gresham*, 225 F.3d at 907 (quotations omitted).  There is a strong presumption of validity that attaches to a law, which is not done away with simply because there is difficulty in determining "whether certain marginal offenses fall within" the law at issue.  *Johnson v. United States*, 576 U.S. 591, 629 (2015) (Alito, J., dissenting) (citing *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963)).

The government contends in its brief that "it is entirely clear what conduct the statute, as a whole, is set out to prohibit."  Dkt. No. 7 at 11.  The Court agrees.  The preamble of the regulation, which is required to be posted conspicuously in all VA facilities, makes clear it is designed to create and promote a safe place for all veterans to visit.  *Id*.  Many veterans, including Krahenbuhl

by all accounts, return home with severe, not always visible, trauma. The regulation is clearly targeted at prohibiting conduct that would upset or aggravate Krahenbuhl's fellow patients at the VA, who may be profoundly affected by a loud disturbance. After witnessing the horrors of war, all veterans are entitled a peaceful experience at their local VA clinic. It is quite clear the preservation of that experience is what this regulation is designed to accomplish.

Even as applied to Krahenbuhl, the regulation is not unconstitutionally vague. The regulation at issue here is remarkably similar to the one the Supreme Court considered in *Grayned v. City of Rockford*. 408 U.S. 104 (1972). The anti-noise ordinance in that case, one of two the Court considered, read, "(N)o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof." *Id*. at 107–08. The regulation here forbids, in relevant part, "[c]onduct on property which creates loud or unusual noise," and, "the use of loud, abusive, or otherwise improper language." 38 C.F.R. § 1.218. In *Grayned*, the Court held that instead of mathematical certainty, all that is required is clarity on "what the ordinance as a whole prohibits." 408 U.S. at 110.

The explicit designation of prohibited conduct in a prohibited area featured in *Grayned* is also seen here. In *Grayned*, the ordinance was directed at protecting the security of schools, while here, the regulation is targeted at protecting the security of VA clinics. *Id*. The particular conduct prohibited is also illuminated in both prohibitions. In *Grayned*, it was "any noise or diversion," while here it is "loud or unusual noise." *Id*.; 38 C.F.R. § 1.218. The precise limiting language seen in *Grayned* that the Supreme Court deemed sufficient is also present here. If those limits were

sufficient then, they are sufficient now. Guided by *Grayned*, then, Krahenbuhl's vagueness claim also fails.

## CONCLUSION

In sum, 38 C.F.R. § 1.218(a)(5) and (b)(11) do not impermissibly infringe on Krahenbuhl's First Amendment right to free speech and are not unconstitutionally vague. Krahenbuhl's motion is therefore **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 11th day of October, 2021.

s/ James R. Sickel
James R. Sickel
United States Magistrate Judge