UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                       Case No. 21-CR-127

JAMISON L. KRAHENBUHL,

        Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Jamison L. Krahenbuhl, after a Court trial on November 4, 2021, was convicted of two counts of disorderly conduct, violations of 38 C.F.R. §§ 1.218(a)(5) and (b)(11). Dkt. No. 32. Mr. Krahenbuhl has filed a Motion for Judgment of Acquittal. Dkt. No. 33. At the close of the Plaintiff's (herein after Government) case, during the Court Trial, the Defendant filed a Motion for a Directed Verdict. That was denied. Tr: 183.

The Motion for Judgment of Acquittal the Defendant has now filed poses the same two arguments stated earlier in the Directed Verdict motion. The two arguments are, the Government failed to prove what the Defendant asserts to be an essential element of the case, which is the Government must prove that the General Services Administration (GSA) was not in control of the VA facility in Green Bay where the disorderly conduct violations are alleged to have occurred. The Defendant titled this argument "(a.) Ownership of the property wasn't proven at trial". The second argument is "(b.) the Defendant's language was protected speech". Dkt. No. 34 p. 2. A Motion to Dismiss on these grounds was denied. Dkt. No. 11.

For the reasons that follow, the Defendant's Motion to Acquit will be denied.

1

# OVERVIEW OF CASE

After the Court Trial. a written decision was rendered by the Court on November 22, 2021 finding the Defendant guilty of two counts of misdemeanor disorderly conduct. Dkt. No. 32.

Rule 29 of Federal Rule of Criminal Procedure (F.R.C.P.), Motion for Judgment of Acquittal, was filed on December 6, 2021 along with a Memorandum in Support of the Motion. Dkt. No. 33 and No. 34. The Government filed a response on December 16, 2021 and the Defendant filed a reply on December 20, 2021. The matter is set for sentencing on January 18, 2022 before the Court.

Rule 29 of the F.R.C.P., Motions for a Judgment of Acquittal, are filed before the submission of the case to the Jury or after a Jury Verdict. This case was not tried to a jury. Rule 58 (F.R.C.P.) Petty Offense and Other Misdemeanors, provides for the filing of a Motion for a New Trial and states Rule 33 (F.R.C.P.) applies. Rule 33 provides, upon Defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the Court may take additional evidence. As this case was not before a jury, the Defendant's Motion for Acquittal will also be considered as a Rule 33 Motion for a New Trial. The Motion for a New Trial can be granted on the basis of new evidence or "other grounds". The other grounds here appear to be, as stated by the Defendant, that the Government did not prove an essential element of the offense of disorderly conduct, that the GSA was *not* in control of the VA Clinic in Green Bay.

In this decision, the Court will review the evidence and address Defendant's Motion for Acquittal and consider a Motion for a New Trial.

**Factual Background**

In the Court Trial, testimony of eight (8) witnesses was presented.

2

They were:

Daniel St. Amour, testified he is a federal law enforcement police officer employed by the Department of Veterans Affairs, stationed at the VA Clinic in Green Bay. Officer St. Amour's duties included policing of the facility and grounds, including screening all entrants to the Clinic, which is not open to the public and an appointment was required for entry to the Clinic. Officer St. Amour was working on March 24, 2021, the day of the incident. TR. 10.

Andrew Turk, testified he was a Supervising Federal Law Enforcement Police Officer, a Lieutenant, at the VA Clinic in Green Bay and in Appleton. He was working at the VA Clinic in Green Bay on March 24, 2021. TR. 74

Glenn Lawson, testified he was a driver who transports veterans to the VA Clinic in Green Bay, who was waiting in his vehicle in the parking lot at the clinic on March 24, 2021.

Tiffany Mueller, testified she is a registered respiratory therapist who works at the VA Clinic in Green Bay and who had a scheduled appointment with Mr. Krahenbuhl on March 24, 2021.

Julie M. Malchak, testified she is a respiratory therapist at the VA Clinic in Green Bay doing cardiac pulmonary diagnostic work. Ms. Malchak shared an office with Ms. Mueller and was working on March 24, 2021.

Michele Sikora testified she was employed at the VA Clinic in Green Bay as a medical support assistant performing scheduling, communicating with patients on arrival, and assisting the medical staff in other parts of the Clinic as needed. She worked the pulmonary reception area on March 24, 2021.

Michael Wallner testified he was the Patient Assistant Representative at the Green Bay Health Care Facility (VA Clinic) assisting veterans in obtaining medical services. He has an office at the VA Clinic but works mostly by phone. He was not at the Clinic on March 24, 2021. He did

not recall why, what or when he was contacted by Mr. Krahenbuhl but recalled he was contacted because Mr. Krahenbuhl was concerned with the services, he was receiving from the VA Clinic.

Jamison L. Krahenbuhl testified as to his actions at the VA Clinic on March 24, 2021.

A video and photos were presented which depicted some of the interactions between VA Staff and the Defendant and were they took place.

The Government, in its reply to the Motion to Acquit, wrote out a narrative cited from the Trial Transcript of what occurred when the Defendant Krahenbuhl went to the VA Clinic in Green Bay for his appointment on March 24, 2021. Dkt. No. 35, p 2-5. The Court sets that out here, as The Court finds it to be an accurate description of what occurred.

> "The case proceeded to trial on November 4, 2021. The government called two VA police officers and several VA health care workers. Officer Daniel St. Amour testified that he was a police officer for the Department of Veterans Affairs and was stationed at the Department of Veterans Affairs in Green Bay (herein after "VA"). (Tr:7-8). He described the VA as a clinic providing health care and treatment for veterans. Officer St. Amour advised that he has an office at the VA as well as a police dispatch center because of the need to patrol and investigate crimes that occur both inside and outside (vehicle patrol) of the facility. (Tr. 8, 10, 18). Officer St. Amour advised he received training to be a VA officer, is considered a federal law enforcement officer, and wears a blue VA police uniform. (Tr. 8, 110).
>
> Officer St. Amour described the loud and profane language Krahenbuhl directed at him both inside and in the VA parking lot on March 24, 2021. Officer St. Amour testified that his first encounter with Krahenbuhl involved Krahenbuhl telling him to "fuck off" while in the presence of other veterans. (Tr. 19). Officer St. Amour and Krahenbuhl then walked to the patient advocates office where Officer St. Amour told Krahenbuhl he wanted to speak with him. (Tr. 22). Krahenbuhl told St. Amour to "fuck off multiple times" in a loud tone and when unable to contact the patient advocate, walked out of the VA. (tr. 22) Officer St. Amour followed Krahenbuhl out of the VA telling him to stop. (Tr. 23). Shortly thereafter, Lt. Turk arrived and Krahenbuhl continued to tell officers in a loud tone to "fuck off". (Tr. 24). Lt. Turk then told Krahenbuhl to stop and put his hands out. (Tr. 25). Krahenbuhl "swung back his right arm and clenched his fist like he was going to strike Lieutenant Turk." (Tr. 25). Officer St. Amour described this as a "bladed fighting stance" meaning "he was in a position to fight." Id. This caused Officer St. Amour to bring out his pepper spray. (Tr. 26). Krahenbuhl unclenched his fist but continued to use profanity in his discussions with the officers. (Tr. 28). The encounter ended with Krahenbuhl leaving "clinic property at a high rate of speed." (Tr. 28).

4

Officer St. Amour identified surveillance videos detailing some of his encounter with Krahenbuhl both in the VA clinic and the outside VA parking lot. (Tr. 30) (Exhibit 6). The first video records Officer St. Amour and Krahenbuhl at the patient advocate's office and then walking towards the VA front door nearly parallel with each other. The second video records the entryway clearly showing that again Officer St. Amour was nearly parallel with Krahenbuhl as they both departed the VA and walked through the VA parking lot. The final video records Krahenbuhl's confrontation with the officers in the VA lot including him walking past officers several times as they appear to speak with him.

Lt. Turk testified he also attended training to be a VA police officer and has been a federal police officer with the VA for five years. (Tr. 74). He described March 24th as an otherwise routine day until he received a call from an employee at the Pulmonary office. Lt. Turk testified that while in police uniform, he encountered Krahenbuhl in the VA lot with Officer St. Amour. Lt. Turk described the parking lot as VA grounds. (Tr. 83-84). Lt. Turk testified that during the encounter, Krahenbuhl positioned himself in a bladed stance with his fist balled up. (Tr. 86). Krahenbuhl repeatedly directed profane language at both officers. (Tr. 85-86). Some of this encounter was witnessed by Glen Lawson, a citizen parked in the VA lot. (Tr. 111-114).

The trial also included testimony from witnesses working in the VA pulmonary office. Tiffany Mueller testified that she is a respiratory therapist working at the Green Bay VA pulmonary section where Krahenbuhl appeared as a patient. Ms. Mueller described how the closed-door meeting with Krahenbuhl was initially pleasant until he raised his voice and asked who the "fuck" she was to question his sleep diagnosis. (Tr. 124, 127). At that point, Krahenbuhl slammed his fists on the table. (Tr. 127, 137). Out of fear for her safety, Ms. Mueller told Krahenbuhl the appointment was over, but he continued to yell at her. (Tr. 128-129, 137).

Julie Malchak also testified that she was working as a respiratory therapist at the Green Bay VA on the day of Mr. Krahenbuhl's appointment. (Tr. 150). Ms. Malchak stated she was at her desk doing paper and computer work when she was disturbed by a male's loud voice and a sound she described as a "slam". (Tr. 153). Ms. Malchak did not know if Ms. Mueller, who was in a meeting with Krahenbuhl, was pushed so she alerted police out of a concern for her safety. (Tr. 153).

Krahenbuhl also testified at the trial. He claimed the respiratory therapist he met with in the pulmonary office that day got angry with him. (Tr. 205). Krahenbuhl admitted raising his voice to her. (Tr. 213). After she ended the appointment, Krahenbuhl stated he "slapped" his hands on the table. (Tr 206). Krahenbuhl stated he then went to the patient advocate office, knocked on the door, and when no one answered, turned around to leave. At that time, he saw VA Officer St. Amour for the first time. After a short discussion with Officer St. Amour, Krahenbuhl stated he exited the VA and then walked approximately 100 meters to his car at which point he was stopped by VA police officers. (Tr. 208). When he exited the VA, Krahenbuhl denied hearing or knowing that Officer St. Amour had followed him out. (Tr. 217). When stopped, Krahenbuhl admitted that he was angry and raised his voice due to officers grabbing his arm to stop him. (Tr. 211, 219). Krahenbuhl stated that is the only point in which he swore one time or "maybe twice" at officers.

5

(Tr. 213, 218). Krahenbuhl denied balling his fists or angling his body away from officers in a "bladed" fashion. (Tr. 222).

In a written decision, this Court found Krahenbuhl guilty at trial of both counts of disorderly conduct. In reaching its decision, the Court found Officer St. Amour's and Lt. Turk's testimony credible, especially when considering the corroborating observations of citizen witness Greg Lawson who viewed the incident from the VA parking lot. Additionally, the Court found the testimony of Ms. Mueller and Ms. Malchak more credible than that of Krahenbuhl.

This Court found the testimony and evidence introduced at trial sufficient to prove the Defendant is guilty beyond a reasonable doubt of the two counts of disorderly conduct as set out in the Second Amended Information. Dkt. No. 32.

## ANALYSIS

In ruling for a Motion of Acquittal, the Court must determine whether there existed relevant evidence from which the Court could reasonably have found the Defendant guilty beyond a reasonable doubt. *United States v. Beck* 615 F.2d 441 447-448 (7th Cir. 1980). In making this determination, the Court must view the evidence including credibility findings and reasonable inferences in the light most favorable to the Government. *Id*. at 448. The Court must examine all the evidence, including that offered by the Defendant. Id. The Court may grant the Motion for Acquittal only if "no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Pree*, 408 F.3d 855,865 (7th Cir. 2005). "Any challenge to the sufficiency of the evidence comes with a heavy, indeed, nearly insurmountable, burden." *United States v. Dessart*, 823 F.3d 395, 403 (7th Cir. 2016) (internal quotation marks omitted). The Court will now discuss the two arguments put forth by the Defendant in support of his Motion to Acquit. The Court will also consider whether the Defendant's arguments entitle him to a New Trial.

A.      **Control of the VA Clinic; Argument**

In this Motion, the Defendant argues the Government failed to prove who owns the VA Clinic in Green Bay. Dkt. 34 p. 2. The Defendant dropped that argument and now asserts there are two elements the Government needs to prove in this case. First, that the VA is in control of the VA facility in Green Bay where the conduct is said to have occurred and second, that the VA facility where the offense occurred was <u>not</u> controlled by the General Services Administration (GSA). Neither party previously asserted this in their proposed trial instructions. Dkt. No. 20 & 23.

The enabling code which authorizes the VA Director to set the rules of conduct at all facilities under charge and control of the VA is 38 C.F.R. §1.218(a) - Security and law enforcement at VA facilities:

> *(a)  Authority and rules of conduct.*    Pursuant to 38 U.S.C. 901, the following rules and regulations apply at all property under the charge and control of VA (and not under the charge and control of the General Services Administration) and to all persons entering in or on such property. The head of the facility is charged with the responsibility for the enforcement of these rules and regulations and shall cause these rules and regulations to be posted in a conspicuous place on the property.

At the close of the Government's case, the Defendant asserted the same argument that the Government failed to prove the GSA was *not* in control of the facility but does not assert the Government failed to prove the VA was in control of the facility in Green Bay. The Defendant asked for a directed verdict. Dkt. No. 31, P.181-182. The Government, in response, asserted the conduct testified to by the witnesses clearly showed the offenses charged occurred on VA-controlled property. The Court denied the motion and continued the trial. The defense then presented its case. T: 181.

Several witnesses testified at trial about the control over the Green Bay VA facility. The testimony of the Federal Police Officer Turk who testified that he was employed as a supervisory officer at both the Green Bay and Appleton clinics. T. 74. Also, by Federal Police Officer St.

7

Amour who testified he performs jobs such as screening visitors, policing the grounds and who can be admitted. T. 9. He also stated the VA Clinic at 2851 University Avenue was not open to the public. The persons treated were only veterans. The evidence showed the facility was staffed by medical personnel employed by the VA. The VA stationed police officers at the Clinic to enforce the rules of conduct established by the VA. A veteran requesting service needed an appointment to enter the facility. T. 10. These rules and regulations put on the use of this facility were made by the VA. VA control was testified to, however, there was no evidence presented by the Defendant that the GSA had any personnel on site, made or posted any rules, or had any presence to enforce rules of conduct at the VA Clinic in Green Bay. It is clear from the totality of the evidence, witnesses' testimony, and reasonable inference, that the VA had control of the Clinic in Green Bay and the GSA did not.

The Defendant argues the issue of non-control of the GSA required a witness to testify of such non-control. The Court determines from the testimony and reasonable inference for the evidence at trial that the VA was in total control of the facility. There was no evidence presented in trial that the GSA was in any manner given charge or exercising any control of the VA facility in Green Bay. Testimony of an official of GSA stating that GSA is not in control is not required where no testimony or evidence is offered that the GSA was given charge or control of the facility.

In 38 C.F.R. § 1.218(a), there are parentheses around the wording "(and not under the charge and control of the General Services Administration)". The parentheses serve to provide incidental or supplemental information, a clarification and emphasis that the facility must be VA controlled to enforce the rules of conduct set out by the VA. The phrase within the parentheses does not create an additional element that need be proved to invoke jurisdiction of a violation of rules of conduct governing VA controlled facilities, but a statutory exception to the VA statute when the GSA is in control of a facility. The parentheses serve to alert and by way of explanation

8

that some of the thousands of government properties have regulations that apply to rules of conduct where a different government agency may have control. If GSA asserts control over this property, then other provisions of the C.F.R. apply. GSA controlled facilities have rules of conduct under **Title 41, C.F.R. sec. 102-74, 390**. The evidence in this case clearly showed the facility is under VA control and there was no evidence put in the record that an exception to the VA control or rules of conduct applies to the Green Bay Clinic.

The evidence in the record is replete with encounters of VA personnel serving the veterans at the clinic. The actions and duties of VA personnel clearly show the facility is under the control of the VA and not another government agency. The reference to GSA control with the parentheses shows an exception may occur to VA control, but it was not shown to have occurred in this case. Case law shows the Government does not have to "allege the non-applicability of an exception" written into a statute, *United States v. Henry*, 615 F.2d 1223 (9th Cir. 1980). The burden is on the Defendant to prove he comes within the exception, *United States v. Sandoval-Gonzalez* 642 F.3d 717, 724 (9th Cir. 2011). That burden was not met here.

In sum, the VA statute containing the GSA provision is a statutory exception rather than element. The jurisdictional nature of this provision is clear because it is contained within parentheses. The Government argues this exception is only meant to cover a small number of circumstances. This GSA provision can be easily excised from the statute with the remaining text clearly setting forth the statutory prohibition. Krahenbuhl could have offered proof regarding this exception if it existed and his failure to do so. This Court correctly found the government sufficiently proved the charged offenses occurred on VA controlled grounds; there is no evidence in the record to the contrary.

9

## B. Defendant's Language was Protected Speech; Argument

The second argument presented by Mr. Krahenbuhl is that the Defendant's language was protected speech. This position was presented in the Krahenbuhl Motion to Dismiss. Dkt. No. 4.

Defendant asserts here as in his earlier Memorandum in Support of a Motion to Dismiss, Dkt. No. 5, P. 8, that the words used by Mr. Krahenbuhl were not taken by Officer St. Amour as threatening and for that matter Officer Turk similarly did not feel threatened by the language. Dkt. No. 34, P. 6.

In the Decision and Order, Dkt. No. 11, P. 5, this Court discussed Mr. Krahenbuhl's language as it was stated in the brief at that time and wrote:

> As an initial matter, Krahenbuhl was not engaging in protected speech during the incident that gives rise to these citations. No matter what gave rise to Krahenbuhl's consternation at the VA on the day in question, he hurled expletives at multiple employees on his way out the door. Any reasonable person subjected to Krahenbuhl's hurricane of invectives would consider them to be fighting words.
> Krahenbuhl analogizes his language to that used by the defendant in Cohen, who wore a jacket emblazoned with the words "fuck the draft." 403 U.S. at 16. In Cohen, however, the use of the expletive was a general statement on a political issue, not directed at one or more specific persons, as Krahenbuhl's use of the word was here. Krahenbuhl's use of a particular expletive as well as his choice to direct it at specific people make his statements fighting words. As a matter of law therefore, they are not protected speech.
> Given that Krahenbuhl is unsuccessful on this first score, his motion fails on First Amendment grounds. However, the Court will continue for the purposes of analysis. Krahenbuhl contends in his reply brief that because the VA hosts periodic outreach events at the clinic, it cannot be a nonpublic forum. Dkt. No. 8 at 5. This misstates the standard. Determining whether a forum is public or not requires a careful consideration of the nature and use of the property as well as whether it is open to the public. Few places have more nonpublic characteristics than medical centers, whose work is private by its very nature. Krahenbuhl seems to admit as much in his brief, writing that he was taken to "a secure and secluded" spot within the clinic, after being escorted from the patient area. Dkt. No. 5 at 2. That phrasing suggests a compartmented atmosphere at the clinic, which lends itself to the private nature of medical facilities in general. That Krahenbuhl was not free to walk wherever he wanted within the facility is itself enough evidence, beyond the obvious privacy-centered focus of medical centers generally, that the facility is a nonpublic forum. Dkt. No. 11, p. 5 to 6.

10

The abusive language and profanities that occurred at the VA Clinic in Green Bay on March 24, 2021, were testified to at trial by several witnesses. The testimony showed a continuous stream of abusive, improper language used by Mr. Krahenbuhl at the VA facility. It is true that trained police officers may not feel threatened by the use of particular abusive language, but that does not change the character of the language to be non-threatening. The testimony in this case was Mr. Krahenbuhl did more than just use the abusive language. He was unusually loud to the extent he could be heard through the walls of the clinic which caused fear in the person in front of him (Ms. Mueller) and fear in the person who pressed the panic alarm (Ms. Malchak). When in the consultation with Therapist Mueller he slammed his fist on the table startling a staff member and causing Ms. Malchak to be concerned for her co-worker's safety and to press the panic alarm. He impeded or disrupted the work of Respiratory Therapist Mueller, and she testified she terminated the session with him as he was very loud and boisterous and inhibited her from completing her duties and she feared what he might do. T. 137.

Mr. Krahenbuhl also did more than repeat abusive language toward the officers. He took a stance toward the police officers causing fear, and led Officer St. Amour to grab his pepper spray. That was the officer's response to both the abusive language and aggressive posture. TR:26. The Defendant did more than use words of complaint exhibiting his displeasure regarding the VA services he received that day. The Court found them to be abusive, loud, and disorderly.

The language used by Mr. Krahenbuhl is not protected language. The VA Clinic is neither a sporting nor entertainment venue. It is not a public forum. It is a clinic where veterans, as Mr. Krahenbuhl, were being served to address their medical needs. The very nature of the VA Clinic is it's a quiet zone, a safe and secure environment where no veterans or staff would be subject to hearing loud, abusive language, or unusual loud noise when receiving medical care.

# CONCLUSION

Having examined the record, there exists relevant evidence from which the Court found the Defendant guilty beyond a reasonable doubt in its decision of November 22nd, 2021. Dkt. No. 33. There is no evidence or new information that the decision is not fully supported by the evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Defendants Motion for Judgment of Acquittal under Fed. R. Crim. P. Rule 29 is DENIED.

**IT IS FURTHER ORDERED,** as there appears no other grounds to grant a Motion for a New Trial under Fed. R. Crim. P. Rule 33 and Rule 58 is DENIED.

The matter will proceed to sentencing on January 18, 2022 at 9:30 a.m., in Courtroom 201 of the Federal District Court, 125 S. Jefferson Street, Green Bay, Wisconsin. The office of U.S. Probation has been requested to prepare a modified presentence report and has provided a copy to the parties. The parties may file a memorandum regarding sentencing and the presentence report. If the parties need additional time to respond to the presentence report, they should contact the Court.

SO ORDERED AT Green Bay, Wisconsin, this 14th day of January, 2022.

BY THE COURT:

s/James R. Sickel
James R. Sickel
United States Magistrate Judge